KAMARGO FURNITURE CO., INC., et al., Respondents-Appellants, v GENERAL ELECTRIC CREDIT COMPANY, Appellant-Respondent.

Fourth Department, February 17, 1978

## APPEARANCES OF COUNSEL

*Quimby, Gosier & Hrabchak (William Quimby* of counsel), for appellant-respondent.

*Williams & Katzman (Lawrence Katzman* of counsel), for respondents-appellants.

## OPINION OF THE COURT

Marsh, P. J.

Defendant General Electric Credit Company appeals from an order which granted plaintiffs' motion for a judgment pursuant to an interlocutory decree on August 2, 1976. Plaintiffs cross-appeal from the denial of their motion to increase the amount specified in the interlocutory decree. In their complaint Kamargo Furniture Co., Inc. and Kamargo Furniture Gouverneur Corporation request an accounting from defendant of a certain "incentive reserve account" which defendant had set aside to be used as an offset against losses upon the accounts that defendant financed for the customers of plaintiffs. They allege that between the years 1961 and 1972 when plaintiffs sold their business they did not receive a satisfactory accounting of the moneys which defendant set aside in the reserve account or of what proper charges for losses on the financed accounts were debited to the incentive reserve account. They also seek an accounting of an insurance bonus of $1 for each financing transaction which plaintiffs had written on defendant's financing contract providing for a reducing term life insurance.

The issues concerning plaintiff corporations' demand for an accounting came on for nonjury trial on April 19, 1976. Jerome J. Katzman testified that he had been president of the two plaintiff furniture companies for 30 years. Plaintiff corporations started doing business with defendant credit company in 1953 (hereinafter referred to as GECC). GECC started a revolving charge plan in 1961 in which plaintiff corporations agreed to participate. The agreement between plaintiffs and GECC provides with respect to the establishment of the "incentive reserve account": "You shall establish a Loss Reserve on your books by crediting thereto such sum as may be agreed upon at the time of purchase of each installment sales contract. Such agreement may be established by your indicating on the voucher of your draft in payment of the purchase of such installment sales contract from us the amount to be

credited to the Loss Reserve. Our deposit of such draft shall be construed as acceptance of your proposal as to the reserve credit. You may charge against the Loss Reserve (i) the unpaid balances, less any unearned finance charge, of delinquent installment sales contracts which you, in your discretion, determine to be in serious enough default not to justify further collection effort including but not limited to Accounts where the customer has not been located after reasonable effort, where the merchandise cannot be located or where the amount of the balance is such that in your sole judgment further collection effort is not economically justified, (ii) all moneys due you from us under this agreement; and (iii) all out-of-pocket expenses including repossession expenses and reasonable attorney fees incurred by you in connection with the collection or attempted collection of installment sales contracts purchased hereunder; (iv) the reasonable expenses of tracing the whereabouts of obligors on such installment sales contracts who cannot be located at the address indicated on the contract; (v) and any other of our liabilities to you, direct or indirect, matured or unmatured, now existing or hereafter arising, joint or several, and reasonable attorneys' fees, court costs, and other out-of-pocket expenses incurred by you in establishing and enforcing such liabilities. On our written demand, you shall reassign to us, without recourse to you or warranties from you, any installment sales contracts charged against the Loss Reserve; and any sums thereafter realized on such reassigned contracts, whether through collections, sale of repossessions or otherwise, shall be paid to you for credit to such reserve. You may in your discretion but shall be under no obligation to pay us from time to time any part of the reserve fund. You will render to us upon demand at reasonable intervals an accounting of all additions to and deductions from such reserve fund since the last such accounting. This reserve fund need not be kept separate from your other funds but may be set up on your books as a credit to us. Upon termination of this agreement and after all then outstanding installment sales contracts have been duly paid or charged against the Loss Reserve, and after all of our obligations to you hereunder have been fully discharged, you shall pay us the then credit balance, if any, in said Loss Reserve."

Pursuant to the agreement, the amount to be credited to the incentive reserve account was to be specified on the voucher of the draft in payment of each installment sales contract sold to GECC by plaintiffs.

From time to time Katzman requested payment of funds from the reserve account but defendant never responded. Trial balances were received from GECC every month from 1965 to 1972 with respect to plaintiffs' Watertown store (plaintiff Kamargo Furniture Company, Inc.). These trial balances show the name of the customer, account numbers, the purchases or returns from plaintiff during the month, payments or adjustments, dates of the transactions with respect to the revolving charge account, dates of actual purchases, balance due, service charge for the month, due date of payment, number of payments due and history of the credit limit for each customer. Trial balances which were contained in two voluminous folders were not printed as part of the record on appeal but were shown in a recapitulated form giving the total service charge for each month of the applicable year, the total account balances outstanding, the number of accounts outstanding for that particular month and the average balance of the accounts outstanding. The service charge for each month was totaled. The average balance of accounts outstanding was found by dividing the total number of accounts into the total balance of accounts outstanding for a particular month. Then the proper percentage depending upon the average balance of accounts outstanding was applied to the total service charge to arrive at a figure which would represent the amount that should have been credited for the particular year to the incentive reserve account. These figures totaled $16,771.16. No adjustments were shown for charges by GECC against the reserve account for losses incurred with respect to the various accounts sold to GECC by plaintiffs.

A recapitulation was given of the trial balances with respect to plaintiff Gouverneur Corporation. The recapitulations with respect to the finance charges as reconstructed by plaintiff Gouverneur Corporation are for years 1968 to 1972 followed the same procedure as for Kamargo Furniture Company, Inc. and totaled $1,735.17.

Katzman testified that defendant offered a $1 bonus for selling life and casualty insurance as a part of the installment contracts sold to GECC. A recapitulation was given for Kamargo Furniture Company, Inc. with respect to contracts sold with insurance between 1965 and 1971 totaling $727.

On cross-examination Katzman admitted that there had been losses on accounts sold to GECC and that the recapitulation of the reserve account did not show any losses against the

reserve account, notwithstanding that the contract in paragraph 2 provides for the debiting against the reserve account of losses on the accounts. Whenever there was a bad account, defendant sent a written notice to plaintiff to pick up the merchandise and then plaintiff paid 50% of the outstanding balance of the account to GECC, minus any unearned interest, and the other 50% was charged against the reserve account. Katzman did receive monthly statements of the reserve account, but he did not keep these monthly statements. There are no exhibits which show the charges against the reserve account. Several letters passed between plaintiffs and GECC and their auditors concerning the inadequacy of the monthly reserve account statements and plaintiffs' inability to understand the charges debited to the reserve account on such statements.

Douglas Liebel, zone operations specialist for GECC, testified that most records with respect to the security fund statements had been destroyed.

Following the close of testimony, the trial court rendered a written decision finding in favor of plaintiff Kamargo Furniture Company, Inc. in the amount of $16,771.16, $1,735.17 in favor of Kamargo Furniture Gouverneur Corporation and $727 with respect to both plaintiffs. The order, entitled an interlocutory decree dated August 2, 1976, provided for judgment in the above amounts, unless within 60 days of the entry of the order and service upon defendant, an accounting as demanded in the complaint be provided. In an affidavit dated October 12, 1976 Liebel asserts that the interlocutory order was filed in the Jefferson County Clerk's office on August 13, 1976. An accounting attached to Liebel's affidavit was served on plaintiffs within the 60-day period specified in the interlocutory decree. In a letter addressed to attorneys for plaintiffs and defendant, the Trial Justice informed the parties that the accounting submitted by defendant pursuant to the court's interlocutory decree did not meet the requirements of the order and advised plaintiffs that judgment could be taken in the amounts specified in such order. A final judgment was entered as specified in the interlocutory decree in the amount of $19,233.33, with interest from December 31, 1972.

There is nothing in the record which explains what the inadequacies are that were found by the court with respect to the accounting submitted on October 12, 1976 although the order appealed from recites the filing of an order to show

cause, a supporting affidavit of plaintiff, written interrogatories to the defendant and an affidavit of defendant in opposition. The record on appeal contains no motion, objection or explanatory affidavit either of plaintiffs' counsel or an officer of plaintiffs as to the deficiencies of the submitted accounting.

While the amount awarded plaintiffs in the interlocutory order and by the judgment is supported by the evidence adduced on the trial, such amount should be adjusted to reflect the court's findings following a determination of such issues as may be raised on the accounting.

The order and judgment appealed from should be reversed and the case remitted to Supreme Court, Jefferson County, to permit the filing of such objections to the account and the taking of testimony with regard to such objections as the parties may be advised.

CARDAMONE, DILLON, HANCOCK, JR., and WITMER, JJ., concur.

Order and judgment unanimously reversed, without costs, and case remitted to Supreme Court, Jefferson County, for further proceedings in accordance with opinion by MARSH, P. J.